## The President &c. of the ATLAS BANK *versus* The President &c. of the NAHANT BANK.

A bill in equity was brought, pursuant to Revised Stat. *c.* 44, by a creditor, agains* a bank which was insolvent and whose charter had expired, praying for an injunc-tion to restrain the bank, its officers and agents, from interfering with the affairs of the bank, and for the appointment of receivers. Between the issuing of the in-junction and the appointment of receivers, other creditors attached property, real and personal of the bank, in suits at law. The receivers thereupon presented a petition, praying that the attachments might be dissolved and that the respondents and all other creditors might be restrained from making further attachments. *Held,* that this petition, which was a distinct proceeding unconnected with the orig-inal suit against the bank, was irregular and must be dismissed ; but that the re-ceivers were entitled to proceed in this summary mode, by a petition filed in the original suit, to obtain a decision of the Court upon the rights of the attaching creditors, without a supplemental bill.

*Held* also, that the attaching creditors did not acquire valid liens, which they could set up to prevent the receivers from selling the property attached and appropriating the proceeds, according to the statute, for the benefit of all the creditors.

The sequestration intended to be made by force of this statute, for the benefit of all the creditors of the bank, takes effect, not merely from the appointment of the re-ceivers, but from the filing of the bill, or at least from the issuing of the injunction.

Whether it would defeat an attachment made before the filing of the bill, *quære.*

The powers of the receivers under this statute, extend to all the property of the bank, real as well as personal.

A bill in equity, under this statute, against such a bank, brought by one creditor, is substantially a proceeding in behalf of all the creditors, and the suit being once instituted as a statute remedy for all, the plaintiff has no power to discontinue it.

A BILL in equity was brought in the county of Suffolk, on July 7th, 1838, by the Atlas bank against the Nahant bank, alleging that the Nahant bank was incorporated on the 22d of March, 1833, (by *St.* 1833, *c.* 144,) and went into operation ; that on the 19th of April, 1837, the act of incorporation was repealed, (by *St.* 1837, *c.* 214,) and the charter was annulled, within the meaning of Revised Stat. *c.* 44, § 7 ; that before the annulling of the charter and up to the time of filing this bill, the Nahant bank was indebted to the plaintiffs in the sum of more than $ 64,000 ; that the plaintiffs have been informed and believe, that the president, directors and company of the Nahant bank unjustly and unnecessarily delay the settlement of the affairs of the bank, and neglect and refuse to make such appropriation of the funds of the bank as justice and equity require, and that measures are about to be taken by the mana-

gers of the bank, which will operate unjustly and fraudulently on the plaintiffs and some of the other creditors of the bank ; that the bank is insolvent ; and that some of the managers are interested in its funds as creditors, and propose to make such a disposition of the property of the bank as will most favor themselves and the interest of their particular friends. And the bill prays that receivers may be appointed to take charge of the effects of the Nahant bank, according to the provisions of Revised Stat. *c.* 44, § 8 ; and that the Nahant bank and all its agents, directors and managers, may be restrained by injunction from interfering with or managing the affairs of the bank.

A petition was afterwards presented to this Court, while sitting in the county of Essex, by Theophilus Parsons, Francis B. Crowninshield and Charles B. Goodrich, reciting that the bill in equity above mentioned had been filed, that the injunction as prayed for was issued on the 9th of the same July, and served on the 10th, and that on the 15th of August then next these petitioners were appointed to be receivers of the Nahant bank and took upon themselves that trust ; and the petitioners allege that it is their duty, as such receivers, to collect the debts due to the bank, and to sell and convert into money the other assets of the bank and apply the proceeds to the payment of the debts due to the creditors of the bank, and that the bank is possessed of certain real estate and personal property which it will be necessary to sell, to pay the creditors of the bank, and that all the assets of the bank will be insufficient to pay the debts of the bank ; but that certain persons claiming to be creditors of the bank, to wit, Asa Pingree and others named, (some of whom lived in the county of Essex,) have since the issuing of the injunction and before the appointment of the receivers, caused the real and personal estate of the bank, and its goods, effects and credits in the hands of sundry persons, to be attached on divers writs by them purchased respectively against the bank, upon which writs suits are still pending, by means whereof the petitioners are prevented from selling the real property of the bank and from collecting the debts due to the bank from the persons summoned as trustees ; that the order appointing the receivers ought to give

to them, by relation to the time of issuing the injunction, and from and after that time, complete and undisturbed possession of all the real and personal estate, goods, effects and credits of the bank, free from all liens to be thereafter acquired by which any one creditor might be preferred to the rest, and as the president and directors of the bank were, by the injunction, prohibited from paying the debts of the bank, so all the creditors thereof might and ought to have been restrained from attaching any of the property of the bank, and ought now to be restrained from causing any part thereof to be seized, set off or sold on execution ; and to enable the petitioners to apply the property ratably to the payment of all the debts of the bank, the attachments ought now to be dissolved, and all the creditors to be further enjoined from making any attachment upon any of the property : Wherefore the petitioners pray the Court to make an order dissolving the attachments before mentioned, and to grant a writ of injunction restraining Pingree and others before named, and all other creditors of the bank, from making any attachments upon the real or personal estate, goods, effects or credits of the bank, and from seizing, selling or setting off the same or any part thereof on execution.

The case upon the petition was continued for a hearing to be had in the county of Suffolk.

*Dexter* and *Goodrich*, in support of the petition, said that this application for an injunction against the respondents must be taken to be a proceeding in the original suit of the Atlas bank against the Nahant bank, and that it might be made by petition or motion, without a supplemental bill ; *In the Matter of Hemiup*, 2 Paige, 319 ; 2 Story on Eq. (2d. ed.) § 890 ; *Price* v. *Evans*, 4 Simon, 514 ; *Kent* v. *Pickering*, 5 Simon, 569 ; that the petitioners were not ordinary receivers under a bill *quia timet*, but were " receivers or trustees" under the statute, with very broad powers, and were authorized to make this application either in their own names or in the name of the Atlas bank ; Revised Stat. *c.* 44, § 7, 8, 9, 10 ; 2 Story on Eq. (2d. ed.) § 833 ; that the bill must be considered as brought in behalf of all the creditors of the Nahant bank, and after the Court had acted upon it, the Atlas bank could not discontinue the suit, and these respondents are parties plaintiff ;

1 Story on Eq. (2d. ed.) § 546, note 2 ; that the object of the statute is to make an equal distribution of the effects of an insolvent bank among all the creditors, and this object would be defeated if any one creditor may attach the property and thereby obtain payment in full of his demand ; that the injunction against the Nahant bank, its officers and agents, operated as a sequestration of all the property of the bank ; that it would be extraordinary, if when the bank is prohibited from paying any debt, the creditor should have the power to compel the payment of it ; that the appointment of receivers under the statute, like an assignment in bankruptcy, relates back to the commencement of the suit ; that it is equivalent to a decree of *quod computet* on a creditors' bill against an administrator, in which case a court of chancery restrains all suits at law by creditors, whether brought before or after the decree ; 1 Story on Eq. (2d. ed.) § 547 ; that if the preliminary action of the Court would not restrain creditors from attaching, the appointment of receivers should have that effect, for by the statute, independently of any order of court, the receivers are bound to collect the assets of the bank and distribute them ratably among the creditors ; 1 Story on Eq. (2d. ed.) § 549 ; 2 Story on Eq. (2d. ed.) § 890 ; *Thompson* v. *Brown*, 4 Johns. Ch. R. 619 ; *Clark* v. *Earl of Ormonde*, Jacob, 108 ; that the appointment of the receivers, being in pursuance of the bill, relates back to the commencement of the suit ; and that the respondents had exhibited their demands to the receivers, and thereby submitted themselves to the equity jurisdiction of the Court in this cause, and whether they claimed a dividend upon the whole demand or only on the balance which might not be satisfied by the attachment, was immaterial.

*Fletcher* and *Washburn* for the respondents, argued that the order appointing receivers, ought to specify their powers ; that the petitioners were ordinary receivers in a chancery suit, and the order of appointment did not empower them to present this petition ; *In the Matter of the Franklin Bank*, 1 Paige, 85 ; 2 Story on Eq. (2d. ed.) § 830, 831, 833 ; *Green* v. *Winter*, 1 Johns. Ch. R. 60 ; Smith's Duty of Receivers, 161 ; *Verplanck* v. *Mercantile Ins. Co.* 2 Paige, 452 ; that two of the petitioners were incapable of acting as receivers,

Atlas Bank
v.
Nahant
Bank.

being the solicitors of some of the creditors of the Nahant bank, and, supposing them to be receivers under the statute. it being a part of their duty to examine and allow or reject the claims of creditors ; 1 Newl. Ch. Pr. 209 ; *Garland* v. *Garland*, 2 Ves. jun. 137 ; *Anonymous*, 3 Ves. 516 ; that whatever might be the effect of a decree appointing receivers, upon the right of a creditor to attach subsequently to the decree, he might secure his debt by an attachment previously to the decree ; that if the respondents could not make the attachment, the petitioners need not ask to have it dissolved ; that the respondents were not parties to the suit commenced by the Atlas bank ; that they were not plaintiffs, because they are not named in the bill, and it is not a creditors' bill, and the statute does not say that a bill brought by one creditor shall enure to the benefit of all, and they could not be made plaintiffs without their consent ; that a creditor is not obliged to proceed against the corporation, but has a remedy against the stockholders, at his option ; that the respondents were not defendants, because they were not served with process ; *Verplanck* v. *Mercantile Ins. Co.* 2 Paige, 438 ; that the injunction affects those only against whom it was issued, and who were parties to the suit , *Fellows* v. *Fellows*, 4 Johns. Ch. R. 25 ; *Bloomfield* v. *Sigourney*, 2 Paige, 355 ; that it does not purport to enjoin creditors, but the sole object of it was to put the property out of the hands of the managers of the Nahant bank ; that the only proper mode of proceeding is to make the respondents defendants in a bill in equity, in which case their answers would be evidence ; that the attachment is a lien *in rem*, and its effect is equivalent to a judgment in England, in giving a priority, and the receivers take subject to the lien, especially in the case of real estate ; 2 Hilliard's Abr. 554, 555, § 8 ; *Corning* v. *White*, 2 Paige, 567 ; 1 Story on Eq. (2d ed.) § 553 ; 2 ibid. § 830 ; that the legislature would have said expressly, that an attachment should be dissolved, had that been their intention ; that by the Revised Statutes the receivers are to take charge of the estate, but it is not enacted that the estate shall vest in them, and they could not convert real estate into money, certainly not without an order of court ; that in New York the court makes an order that the bank shall assign to

the receivers, and this ought to be done under our statutes ; that if the property did vest in the receivers, yet until they were appointed it was in the corporation, and the attachments were therefore rightfully made ; that the Atlas bank might have discontinued their suit at any time and attached the property themselves, and other creditors, therefore, were not obliged to abstain from pursuing their legal remedies ; and that in no case has this Court enjoined against proceeding at law ; *Stone* v. *Hobart,* 8 Pick. 464.

*Dexter,* in reply, said that if the intention of the legislature was merely to protect the property from waste by the officers of the bank, the statute was of but little importance ; that the whole scope of it was different ; that the main object of it was to provide for an equitable administration of the assets of the bank ; that if there was an irregularity in the appointment of the receivers, a few creditors were not therefore to be permitted to engross the whole of the property to the injury of all the other creditors, but the Court would now remove the receivers and appoint suitable persons in their place, and restrain the respondents ; that the Court may enjoin against an action at law, its chancery powers having been greatly enlarged since the decision in *Stone* v. *Hobart,* 8 Pick. 464 ; Revised Stat. *c.* 44, § 9 ; that commonly an injunction goes only against parties to the bill, but there are exceptions to this general rule, and the case of a creditors' bill is one of the exceptions ; that there is no substantial difference between this bill and a creditors' bill, and the Court have acted upon it as being in the nature of a creditors' bill ; 1 Story on Eq. (2d ed.) § 546, note 2 ; Eden on Injunc. 46, 320 (cites 1 Dickens, 68 ; 1 Ball & Beatty, 108 ; and 2 Dickens, 670) ; that the words, " estate and effects," in Revised Stat. *c.* 44, § 8, are broad enough to include all kinds of property, and the statute contemplates a final administration, for all the debts of the bank are to be paid and the balance of the property distributed among the stockholders ; and that whether the title to the property is in the bank or in the receivers, is immaterial, for the property would pass by a sale and deeds made by the receivers.

SHAW C. J. delivered the opinion of the Court. The questions which have been discussed in this case, in form came

41 *

before the Court in the county of Essex, on a petition there filed, in the name of Parsons and others, as receivers, against Pingree and others, attaching creditors of the property of the Nahant bank.   It was intimated, when the hearing came on in this county, as a case reserved from Essex, that this proceeding was irregular, that whatever power and jurisdiction the Court have in the matter, they take as incidental to the original jurisdiction of the principal cause, and this proceeding could be had only as a step in the original cause.   The Court are now confirmed in that view, and are of opinion, that the petition pending in the county of Essex ought to be dismissed ; but as both parties there appeared, and upon a reservation of the case to this county, proceeded to a full hearing upon the merits, that petition, we think, ought to be dismissed without costs.

We then proceed to consider the matter in the same manner as if the petition were regularly filed and entitled in the cause pending in this county, and notice thereof were given to the respondents.

The first question is, whether the receivers are entitled to proceed in this summary mode, to obtain a decision of the Court upon the rights of the respondents, without a supplemental bill.

By the terms of the statute, Revised Stat. *c.* 44, § 9, the Court are to make all necessary orders and decrees to aid and protect the receivers in the collection and disposal of the property, and as incident thereto the Court have authority to protect the funds from interfering claims, and, for that purpose, to inquire into the validity of those claims.

Supposing the case and the parties rightly before the Court, the question is, whether the respondents acquired any legal and valid lien by their attachments of the property of the Nahant bank, which they can set up, to prevent a valid sale thereof by the petitioners as such receivers.

It appears by the facts, uncontested, that on the 7th of July, 1838, the Atlas bank, claiming to be a creditor of the Nahant bank, to a large amount, filed their bill, and made application to this Court for an injunction, pursuant to the provisions of the Revised Stat. *c.* 44, § 8, 9, and 10, alleging the insolvency

of said bank, and praying proceedings ; that on the 9th of July an injunction was granted, and on the same day a subpœ-na was issued against the Nahant bank, returnable the 1st Monday of August ; that the proceedings were delayed a few days by consent, and that on the 17th of August, by consent, the petitioners were appointed receivers ; that afterwards, by an order of one of the justices of this Court, they were author-ized to make sale of the real and personal estate ; and that these orders were confirmed by a decree of this Court ; that they were directed to advertise notice to all creditors to come in and file their claims, and the receivers were directed to re-·iort a list of claims allowed, and a list of claims disallowed, with their reasons for such disallowance. Such is the general state of the cause.

It further appears, that after the filing of the bill and issuing of the injunction, and before the actual appointment of re-ceivers, to wit, about the 21st of July, the respondents made their attachments of the real estate of the Nahant bank, for debts alleged by them to be due ; and the question is, whether these attachments are available against the receivers, claiming a power to sell the property and hold, appropriate and distribute the proceeds according to the provisions of the statute, for the benefit of all the creditors. This depends upon the construction of the statute.

The question arises upon the provisions of the Revised Stat. c. 44, § 8, 9, and 10, and its express provisions are to be expounded according to the objects and purposes of the statute, and the subject matter to which it applies. The power is given to the Court, in relation only to corporations, whose charters have expired. By a previous provision, these are kept in being for certain limited purposes, having reference solely to a final settlement of the affairs of such corporations, and not to the continuance of the business, for which they were established. On such expiration of the charter, the Supreme Judicial Court, on application of any creditor, or of any stock-holder or member thereof may appoint one or more persons to be receivers or trustees of and ·for such corporation, to take charge of the estate and effects of such corporation, to collect the debts and property, &c

Section 9 provides, that the said Court shall have jurisdic‑ tion in chancery of such application, and of all questions arising in the proceedings thereon, and may make such or‑ ders, injunctions, and decrees thereon as justice and equity may require.

Section 10 provides, that the said receivers shall pay all debts of the corporation, if the funds in their hands are suf‑ ficient, otherwise distribute the same ratably among all the creditors who shall prove their debts in the manner that shall be directed by any order or decree of the Court, and distribute the balance among the members or stockholders entitled there‑ to, or their representatives.

From this view of the statute, it is obvious that it was in‑ tended to promote and facilitate a prompt and equitable settle‑ ment of the affairs of expiring corporations, and it mainly has reference to insolvent corporations, that is, to corporations in debt, and which are in fact or apprehended to be insolvent. In case of corporations manifestly solvent and able to pay all their debts, any provision in regard to priority of claims of creditors would be unimportant, because all would be paid in due course of legal proceedings.

It is, therefore, in its character essentially a statute of dis‑ tribution amongst creditors, with a residuary trust for stock‑ holders, after all debts are paid. Treating it as a law of this description, we should expect to find in it that great principle of equity, which lies at the foundation of all systems of distri‑ bution of insolvent estates of persons either living or deceased, viz. that all creditors, with very limited exceptions, shall share equally in a fund insufficient to satisfy the whole. Attachment on mesne process is to be considered as a remedy merely given and regulated by law, to enable one creditor, who is pro‑ ceeding for himself alone, to obtain satisfaction of his debt, and, when several are so proceeding, he who is first in time is prior in right. But in equity, all these priorities give way to a gen‑ eral proceeding, which has for its object to distribute all the effects of a debtor, by paying the whole if there be assets, and then providing for a ratable distribution. If the prop erty turn out to be sufficient to pay the whole, any prior‑ ity by attachment would be useless ; if not, it would be unjust.

And the Court are of opinion, that the provisions of the statute, taken together as a whole, do necessarily prevent and defeat the right of any individual creditor, to obtain a prefer-ence for himself, by attachment on mesne process, by making another and different appropriation of the property of the expiring corporation, entirely inconsistent with the right which would be claimed under such attachment.

The persons appointed are to be receivers or trustees, indicating a power much larger and of a different character from that of ordinary receivers, in a chancery suit. They are to take charge of the estate and effects. As they are to pay all debts, the words " estate and effects " must be construed to extend to all property, liable by law as assets for the payment of debts, and must include all estate and effects liable to attachment. They are to pay *all debts* ; if therefore the estate and effects consist of any property other than money, they must convert it into money, as the only means of applying it to the payment of debts, and for this purpose they must have power, either by force of their appointment, or by an order of court, to sell the property, and for the purpose of this inquiry, it is immaterial which. The funds in their hands are, all the estate and effects, of which they are to take charge by express direction of the statute. The court shall have jurisdiction in chancery of such application, and of all questions arising thereon, and may make orders, &c. All these powers and duties, having in view the collection and appropriation of all the estate and effects of the corporation, and with a view to the payment of all its debts, are wholly incompatible with a concurrent right of a single creditor to take by attachment on mesne process and appropriate a part of that same property for the security and satisfaction of his own particular debt.

And the Court are of opinion, that the sequestration intended to be made by force and operation of this statute, for the benefit of all creditors, by one general process, must be considered as taking effect, not merely from the time of the appointment of receivers, which is an incidental step in the proceeding, but from the institution of the proceeding by the filing of the bill, or at least by the act of the Court sustaining it, by the issuing of an injunction. For the purposes of this

cause, it is unnecessary to consider whether this sequestration takes effect from the filing of the bill or the issuing of the injunction, as all the attachments in question were made subsequently to both. Whether the statute should be so construed as to defeat an attachment made prior to the filing of the bill, we give no opinion.

But it was argued that the attachment being made before the appointment of receivers, the estate was then vested in the corporation and might well be attached, that the estate did not pass to the receivers till their appointment, which was after the attachment. But we think this view of the case does not change the result. It is not necessary to maintain that the legal estate vests in the receivers at their appointment. They are vested with a power to sell the property, and when they execute the power, the property passes to the purchaser by force of the statute. If an attachment be made on the estate of a person, who afterwards dies, and the estate is declared insolvent, the attachment is dissolved. So, if an executor or administrator is authorized to sell real estate under a license for the payment of debts, such power relates back and divests the estate of the devisee or heir, although no estate was ever vested in the executor or administrator. If the execution of a power to sell can relate back and defeat a vested estate, *à for tiori* may it relate back and discharge a lien created by mere operation of law, by service of legal process, in favor of a larger legal process, intended to secure and pay all debts.

It was contended that the power did not extend to the real estate, but only to the rents and profits, because such is the usual power of receivers under a proceeding in chancery. To estimate the force of this objection it is necessary to recur to the condition of the corporation and its property, and the purposes of the statute. By the case supposed the corporation has expired, and all its powers of disposing of its own property are taken away. All the debts are to be paid, and the surplus, if any, distributed amongst the stockholders or corporators, who are the parties beneficially entitled to the whole property, after the debts are paid. If then the powers of these receivers do not extend to the disposal of the real estate, how are these parties beneficially interested, to avail themselves of

the property ? By the dissolution of the corporation in whom it is vested, the property does not vest in the corporators. Shall it escheat to the Commonwealth ? Every consideration of equity and policy, which could influence the legislature, leads to the belief, that this statute was intended to prescribe a mode for the final settlement of the whole concerns of an expiring corporation, as well for the benefit of the owners of the stock and property in it, as of creditors, inasmuch as the proceedings may be instituted by stockholders and corporators, as well as creditors, and the former as well as the latter are to share in its benefits, according to their relative preëxisting rights. But as this final and equitable arrangement can only be made by construing the powers of the receivers to extend to all the real and personal property of the corporation, the conclusion is, that it was the intention of the legislature so to extend these powers.

It is objected among other things, that the receivers are to act as judges, according to the powers claimed for them, and hence it is argued, that as they are an unfit body to act in that capacity, it could not be intended to confer such powers. But there is a distinct provision, that the debts are to be proved in such manner as the Court may direct, which, in case of contested claims, would undoubtedly be, in some well approved course of judicial proceeding. The receivers rather stand in the character of administrators than judges, to pay claims ascertained in due course of law.

It is said that this is not a proceeding in behalf of all creditors, and that all creditors are not bound to come in nor bound by the process, but have other remedies against the corporation and against the stockholders. We think this substantially a proceeding in behalf of all creditors, because all are entitled to a dividend, and because it provides for an administration of all the assets. It is true that they are not bound to prove their debts and take a dividend, because it is a privilege they may waive, and the remedy against the corporation, if it remains nominally, would be of little value after the corporation has expired, and all its effects have been disposed of. As to the statute remedy against the individual stockholder, it is independent and collateral, like the remedy against a surety, and does not affect the question.

It is said, that if these attachments are dissolved, the plain-
tiffs may dismiss their bill, and then by a new process, attach
the same property themselves.    But we do not so consider it.
The plaintiffs having once instituted the proceedings as a
statute remedy for themselves and others, they go on afterwards
for the benefit of all parties concerned, and the original com-
plainants have no power to discontinue, any more than a peti-
tioning creditor could discontinue the proceedings under a com-
mission of bankruptcy.

On the whole, without reverting to the whole of the full ex-
tended argument on the subject, the Court are of opinion, that
this proceeding, in the special case of a corporation whose
charter has expired, was intended to provide one general rem
edy for all creditors, and must necessarily supersede an inter-
fering proceeding instituted for the benefit of a particular cred-
itor, that it was intended to prevent and defeat special pref
erences by attachments on mesne process, and that these
respondents cannot set up their attachments against the power
of the receivers to sell the attached property for the general
benefit of all the creditors, and that upon a proper petition and
notice, the respondents may be restrained from proceeding on
their attachments.